SMITH, Justice:
The City of Jackson, and certain owners of property in the City of Jackson, have appealed from a judgment of the Circuit *440 Court of the First' Judicial District of Hinds County which reversed an order of the City Council refusing to approve a proposed subdivision of certain land owned by appellees, Louis E. Ridgway, Jr. and Bennie Kirkland, together with their request for a permit to build thereon a two-family duplex apartment.
The case presents the question of whether the City Council of the City of Jackson is without discretion to reject but must approve, under the circumstances disclosed by the record, a proposed subdivision of land lying in the City of Jackson and submitted to it by the owners.
It appears that on May 9, 1969, appellees, Louis E. Ridgway, Jr. and Bennie Kirkland, purchased a tract of land measuring 150 feet north and south and 600 feet east and west which lay within a district classified “A-l residential” under the zoning ordinance of the City of Jackson. This tract was undeveloped and had never been subdivided into lots. However, it was surrounded by an area comprised of existing subdivisions, the smallest lot in these existing subdivisions containing 13,500 square feet, or having a frontage of 90 feet or more. All of these lots conformed to the specifications of lots in a “Class A” subdivision under the terms of the ordinance of the City of Jackson. At the time of the purchase of the undeveloped tract by ap-pellees, the area surrounding it had been developed, many attractive and expensive single family homes had been built, and it comprised an attractive residential neighborhood.
Following-the purchase of the tract in question, appellees presented to the City Council of the City of Jackson a plat for the subdivision of their undeveloped tract, proposing thereby to divide it into 10 lots, each with only a 60 foot front and an area of only 9,000 square feet. This application was withdrawn when property owners appeared and objected. Thereafter, on July 28, 1970, appellees submitted to the City Council for approval plans and specifications of a duplex residence to be erected on the west 60 feet of the tract, that is, upon a lot with a 60 foot front and an area of 9,000 square feet. Protestants again appeared and objected to the approval of this proposal. After deliberation, the City Council denied the permit sought by appellees upon the grounds that the proposal would result in implanting a “Class C” subdivision into a “Class A” area, would be out of character with the surrounding area, would depreciate the value of the existing property in the neighborhood, and would not promote in any way the health, safety, morals or general welfare of the community.
On September 22, 1970, appellees again appeared before the City Council, and renewed their request for the approval of the proposed subdivision of the property this being the same proposal which had been withdrawn by them on July 21, 1970. The City Council heard the matter, and after deliberation, disapproved the proposed subdivision for the same reasons that it had disapproved the request for a permit to build two-family duplex apartment houses on 60 foot lots. Bills of exception were retained by appellees in each case and in due course were filed in the Circuit Court of the First Judicial District of Hinds County. There the cases were consolidated.
On the record made, the circuit court reversed the order of the City Council and ordered it to issue the requested building permit and to approve the proposed plat of the subdivision. It is from this order of the circuit court that the present appeal has been prosecuted.
Division 9, Title 16, Mississippi Code 1942 Annotated, deals with the powers of municipalities to regulate land use within their corporate boundaries. Mississippi Code 1942 Annotated section 3590 (Supp. 1971) provides, among other things:
For the purpose of promoting health, safety, morals, or the general welfare of the community, the legislative body of any municipality is hereby empowered *441 to regulate the height, number of stories and size of building and other structures; the percentage of lot that may be occupied, the size of the yards, courts and other open spaces, the density of population, and the location and use of buildings, structures and land for trade, industry, residence or other purposes, and shall, for playgrounds and public parks, possess the power, wherein requisite, of eminent domain and the right to apply public money thereto, and may issue bonds therefor as by law otherwise permitted.
The two sections following deal further with this subject:
For any and all of said purposes, the municipal body may divide the municipality into districts of such number, shape and area as may be deemed best suited to carry out the purposes of the foregoing section; and within such districts it may regulate and restrict the erection, construction, reconstruction, alteration, repair or use of buildings, structures or land. All such regulations shall be uniform for each class or kind of buildings throughout each district, but the regulations on one district may differ from those in other districts. The said municipalities may impose such terms as deemed requisite when new subdivisions are laid out before allowing dedication and may receive easements in any land affected hereunder whereby this law may be made effective. [Mississippi Code 1942 Annotated section 3591 (1956)].
Such regulations shall be made in accordance with a comprehensive plan, and designed to lessen congestion in the streets; to secure safety from fire, panic and other dangers; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population; to facilitate the adequate provision of transportation, water, sewerage, schools, parks and other public requirements. Such regulations shall be made with reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular uses, and with a view to conserving the value of buildings, and encouraging the most appropriate use of land throughout such municipality. [Mississippi Code 1942 Annotated section 3592 (1956)].
The City of Jackson has adopted ordinances for the purposes of implementing the preceding sections. These ordinances regulate land use and also establish building codes and standards. An ordinance adopted June 1, 1950, under the zoning statutes purports to regulate, among other things, “the size and dimensions of area surrounding buildings.” The title is explanatory of its general purposes. An ordinance adopted July 10, 1962, deals with the subdivision of lands. In this ordinance appears the following :
(3.5) Lots in Class “A” subdivisions shall have at least an 80 foot frontage and shall contain at least 16,000 square feet, and in Class “B” subdivisions shall have at least a 60 foot frontage and shall contain at least 9,000 square feet, and in Class “C” subdivisions shall have at least a 50 foot frontage and shall contain at least 7,500 square feet. All lots located at street intersections in Class “B” and “C” subdivisions shall be at least 1/3 wider than adjacent lots in said subdivisions.
This ordinance also requires submission of any proposed subdivision of land to the City Council at a regular meeting for consideration; and provides that “and if finally approved by the Council” it shall be certificated by the mayor and clerk before filing with the chancery clerk.
Therefore, it is apparent that the City of Jackson has adopted a comprehensive plan covering land use, as well as building and zoning regulations, the validity of which is not challenged in this case. Mississippi Code 1942 Annotated section 3597 (1956) provides:
Whenever the provisions of any other statute or local ordinance or regulation *442 require a greater width or size of yards, courts or other open spaces, or require a lower height of building, or a less number of stories, or a greater percentage of lot to be left unoccupied, or impose other standards higher than are required by the regulations made under the authority of the within zoning law, the provisions of such other statute, or local ordinance or regulation shall govern; otherwise the particular statutes or local ordinances or regulations shall be controlled by the provisions of the regulations made under the within zoning law.
In the present case, an unsubdivided tract of land 150 feet by 600 feet was left unsub-divided by developers of all of the acreage around it. All of the surrounding area, as well as the tract in question, lie within a residential district or area. All of the area surrounding the tract in question is subdivided without exception into lots which fulfill the requirements of a “Class A” subdivision as set forth in the ordinance of the City of Jackson. After all of the surrounding area had been divided into “Class A” subdivisions, and had been developed into an attractive neighborhood by the construction of a great many family homes, appellees bought the undeveloped and un-subdivided tract in question which lay ■ in its midst and proposed that the City of Jackson permit them to subdivide it into ten 60 foot front lots, containing only 9,000 square feet, an amount of square footage sufficient only to meet the requirements of a “Class B” subdivision as defined in the city ordinances. The subsequent request for a permit to construct a duplex two-family apartment unit on the west 60 feet reflected an intent or purpose to leave the tract unsubdivided and to do by indirection what had been denied them directly and to construct a similar duplex upon the next 60 feet of land, and so on, until ten duplexes, each upon a 60 foot lot, had been built upon the unsubdivided 150 foot by 600 foot tract.
Appellees rely, in the main, upon Berry v. Embrey, 238 Miss. 819, 120 So.2d 165 (1960) and City of Jackson v. Sunray DX Oil Company, 197 So.2d 882 (Miss.1967).
In Berry v. Embrey, supra, the proposal was to construct a shopping center on land “located outside the zoned areas.” This fact was emphasized by the Court and stated at least five times in the opinion. No question of subdividing unsubdivided property in a zoned and already developed area was involved. The facts in Berry distinguish it from the present case.
In the case now before us, in reversing the City Council, the trial court stated that the case was controlled by the City of Jackson v. Sunray DX Oil Company case and based the reversal squarely upon it.
City of Jackson v. Sunray DX Oil Company, supra, involved a refusal of the City to grant a building permit to an owner authorizing construction of a service station upon a lot which had been zoned commercial eight years previously. There was no question whatever of approval of the subdivision of land not previously subdivided nor of the adequacy for the purpose of the lot upon which it was proposed to construct it. Many service stations already existed in the area. Under the circumstances in that case, the Court disposed of the issue there presented by holding that a service station was a conforming use, that the proposed construction of another would not constitute a nuisance per se, and that the lot owner, as a matter of right, was entitled to construct it in absence of proof that it would constitute a nuisance in fact. In the Sunray DX Oil Company case it was argued that no question of zoning was involved. The same argument is advanced here and, strictly speaking, that is true. There is no issue in this case as to zoning or rezoning the property involved. The question here is fundamentally different from that in the Sunray DX Oil Company case. The type or nature of the proposed conforming use and whether such proposed use would constitute a nuisance was the issue in Sunray DX. The decision in no *443 way involved a question of approval or disapproval of a proposed original subdivision of unsubdivided land nor the adequacy of the lot size or building site for the proposed use. The Court was not called upon to decide whether several service stations might be constructed on the lot without doing violence to fundamental legislative purposes of “promoting health, safety, morals or the general welfare of the community.” Here, the proposal of appellees to construct 10 duplexes to house 20 families on a 600 foot long tract would hardly be calculated to carry out basic legislative purposes, expressed in the statute to “lessen congestion in the streets; to secure safety from fire, panic and other dangers; . . . to prevent the overcrowding of land; to avoid undue concentration of population; to facilitate the adequate provision of transportation, water, sewerage, schools, parks and other public requirements. . . . ”
Here, the question is not as to the type or character of the structures proposed. The case involves a review of the determination by the municipal authority that the crowding of 20 families in 10 two-family duplexes, to be constructed on a piece of land 150 feet by 600 feet, in the midst of an already highly developed residential area, should not be permitted. We think the statutes enacted by the legislature in this regard, as implemented by the ordinances of the City of Jackson, make it sufficiently clear that the governing authority of the municipality had the power to decline the request of the appellees provided that such action was not unreasonable, arbitrary, capricious, nor abusive of discretion. In the very nature of things, purchasers of unsubdivided land located in the midst of an already highly developed residential area, should not be permitted, at their unrestricted discretion and election, to frustrate the fundamental purposes of the statutes relating to orderly city planning and in addition to affect adversely values of existing homes.
The action of the City of Jackson in declining to approve the proposed subdivision as well as in refusing to issue a permit to build two-family dwellings on 60 foot lots was not unreasonable, arbitrary, capricious, abusive of discretion nor unlawful under the circumstances appearing in the record. The decision of the trial court will be reversed and the orders of the City Council reinstated.
Reversed and orders of the city council reinstated.
GILLESPIE, C. J., and PATTERSON, ROBERTSON and SUGG, JJ., concur.