ROBERTSON, Justice:
Appellants, Wildwood Village Apartments, Inc. (Wildwood), Mississippi Industrial and Special Service, Inc. (MISS), and Delta Construction Company (Delta), appeal from a judgment of the Circuit Court of Jackson County, affirming an order of the City Council of the City of Pas-cagoula, Mississippi, revoking Building Permit No. 5326, which had been issued to Wildwood and Delta for the construction of 8 buildings, containing 64 apartment units, on Pine Street in Pascagoula.
*437 The City of Pascagoula is a municipality on the Mississippi Gulf Coast governed by a Mayor and a Board of five Councilmen. The City Council employed Phillip R. Kelley as City Manager, and W. J. Ditsworth as Building Inspector and Building Official.
On November 25, 1970, Mrs. Bobbie Toups of Housing Consultants, Inc., wrote City Manager Kelley requesting a letter from the City stating that the low rise apartment project consisting of 18 buildings containing 144 apartment units, which project would be financed under Section 236 of the National Housing Act, complied with all local codes and was acceptable to the city, and further requesting certain assurances as to the availability of utilities to the proj ect site.
Although 8 of the buildings containing 64 apartment units would be located on Pine Street in the northeastern part of the city, and 10 buildings containing 80 apartment units would be located on Brazil Street in the southwestern part of the city, the two housing projects being about 2 miles apart, both were treated as one project of 18 buildings and 144 apartment units with FHA and HUD and the City of Pas-cagoula.
City Manager Kelley on December 16, 1970, wrote Buford Yerger, Mississippi Director of FHA and HUD:
“The City of Pascagoula has reviewed the utility layout of a proposed 64 unit Apartment complex on Site A — Pine Street, Pascagoula, Mississippi. Please be advised that this plan meets all of our local codes and is acceptable to the City of Pascagoula.”
On April 1, 1971, Jon H. Bennett, Chairman of the Planning Commission, wrote Robert C. Travis, Attorney for Wildwood:
“This is to advise that the property legally described according to the attached legal description, ‘Exhibit A’ and situated in the City of Pascagoula, Mississippi, is zoned Residential (R-2) and may be used for multiple family apartment usage.
“Construction of the above referenced apartments according to plans and specifications with which we are already familiar will meet all applicable zoning requirements of the City of Pascagoula.”
On April 13, 1971, W. J. Ditsworth, City Building Official wrote Buford Yerger, Director of FHA and HUD, that the building permit for the entire project would cost $904.25, that upon issuance of a check for that amount to the city, and an addenda providing firewalls in the attics and upstairs windows to be sixteen inches from the floor, that the building permit would be issued. The addenda concerning firewalls and upstairs bedroom windows was submitted by Delta on April 20, 1971, and accepted by Ditsworth for the city on April 22, 1971.
On April 26, 1971, a representative of the appellants filed with Building Official Ditsworth application for a Permit for the entire project of 144 units and 18 buildings at the Pine Street and Brazil Street sites. On that same day, Building Inspector Dits-worth issued two building permits, Permit No. 5325. being for use at Brazil Street and Permit No. 5326 for use at the Pine Street site. Both permits described the project as “New Apartments 144 Units, 18 Buildings.”
On April 28, 1971, Wildwood obtained a loan of $2,005,000 from the Deposit Guaranty National Bank of Jackson, Mississippi, and executed a note and deed of trust, both dated April 20, 1971, to the Bank. The deed of trust covered both the Pine and Brazil Street properties. On that same day, April 28, 1971, Wildwood disbursed $285,766.75 of the loan, most of the disbursements being for land acquisition, design fee to the architects, financing fee, GNMA fee, FHA mortgage insurance premium, FHA inspection fee, and consultant’s fee. None of the disbursements was *438 for actual construction nor even for clearing and preparing the two sites.
About May 20, 1971, Delta began to clear the Pine Street site. On June 1, 1971, upon petition of all of the homeowners on Pine Street opposite the Pine Street project, the City Council entered an order directing that construction on the Pine Street site be suspended “until the City Attorney, the Honorable E. R. Schroeder, can check out the legal ramifications of all phases of this matter.” On June 3, 1971, the city attorney advised the city council by letter that, even though Wildwood and Delta had violated the city ordinances by submitting one application and paying one building permit fee for these two widely separated apartment projects, that this was done on the advice of the city manager and the building official, and that since this technical violation was the fault of the city and not the applicant a revocation of the permits issued would not be justified.
On June 16, 1971, a lengthy amended petition signed by the homeowners adjoining and adjacent to the Pine Street project was filed with the city council. The amended petition closed with this statement and request :
“(19) Petitioners seek the right to be heard in the manner provided by the ordinances of the City, adopted in compliance with the laws of the State of Mississippi. Therefore, petitioners request that the applicants be given notice of a hearing on the question of whether Permit No. 5326 should be revoked. That if such permit be revoked by the City Council, that the applicants be required to file separate applications for each proposed housing project in accordance with the applicable ordinances of the City, that the Pine Street Housing Project application be referred to the City Planning Commission and the Board of Zoning Adjustment and Appeals for consideration and review as required by Sections 300.14 and 904 of the Code of Ordinances, and that there be a public hearing thereon as required by Sections 2-119, 1105.3.9 and 1105.2.1 of the Code of Ordinances, at which time all parties in interest may be heard; and the matter submitted to the City Council for their final decision thereon as provided by Section 904 of the Code of Ordinances of the City of Pascagoula.”
On June 16th, the City. Council referred the matter to the City Planning Commission. The Planning Commission did not hold a public hearing but did hear from the appellants, the objectors, and some planning experts, and on June 18, 1971, submitted their report finding that the proposed apartment complex to be located on Pine Street did not violate “any of the Zoning Ordinances or building codes” of the city and recommended to the City Council that the construction of the Pine Street apartment complex be allowed to continue. The Planning Commission further recommended:
“a. That the City provide an eight (8") inch water line to the entire neighborhood in the immediate future.
“b. That Pine Street be widened to the minimum width required for streets in the City of Pascagoula.
“c. That the buildings of the proposed apartment complex provide suitable recreational equipment on the site.”
On June 22, 1971, the City Council voted to refer the matter to the Zoning Board of Adjustment and Appeals for a public hearing after the Board had published the required notice of a public hearing. Pursuant to the published notice, the Zoning Board met at 7:00 p. m. on July 12, 1971. The protesters were present in person and by counsel, but none of the appellants or their counsel appeared at this meeting. Mrs. Harolyn W. Markle, County Court Reporter, was present to transcribe all testimony and to receive and record all exhibits, and her complete transcript of the pro-, ceedings before the Zoning Board are a part of this Record. The Zoning Board of *439 Adjustment and Appeals unanimously passed this motion:
“We recommend that under the evidence presented by the protestants, the building permit previously granted by the City, the same being No. 5326, for the Pine Street development should be rescinded.”
On July 20, 1971, the city council met, and after considering the recommendation of the City Planning Commission and the Zoning Board of Adjustment and Appeals and the transcript of the proceedings before the Zoning Board, rejected the recommendation of the Planning Commission and accepted the recommendation of the Zoning Board that Building Permit No. 5326 be revoked.
On July 20, 1971, the City Council found, and its Minutes recite, among other things:
“The proceedings before the Board of Zoning Adjustment and Appeals on Monday, July 12, 1971 and the evidence before that board is fully set out in the report of that board. The applicants, although notified of the hearing, elected not to appear before the Board of Zoning Adjustment and Appeals.
“The City Council, throughout these proceedings, has taken the position that the sole issue before the City Council is whether the Ordinances of the City were complied with by the applicant, and whether Building Permit No. 5326 was lawfully issued by the Building Official. Under the ordinances of the City, both private residential housing developments and federally subsidized residential housing developments are subject to the same zoning and other requirements of the city, and must conform therewith.
“We find that the Building Official was in error in issuing Building Permit No. 5326 to applicant without separate applications being filed by the applicants for each proposed group residential housing development. Separate permit fees should have been paid. The permit fee paid was not sufficient under Section 7-58 of the Building Code. Under the facts of this case, the proposed comprehensive residential housing developments should have been submitted to the City Planning Commission and the Board of Zoning Adjustment and Appeals for their recommendation thereon, and to the City Council for approval prior to the issuance of the permit.
“The Building Official did not correctly calculate the minimum lot size required for the Pine Street housing development under Article VIII, Note “A”, nor the required spaces for off street parking under Section 602 of the Zoning Ordinance. The lot on which the housing development was proposed to be constructed is presently subdivided into Lots 1 through 9, inclusive, and Lots 16 and 17 of the J. C. Delmas Subdivision, Surveyors Record Book 1, Page 106, Jackson County, and part of Lot 10 of the S. Krebs Tract, Claim Section 1, Township 8 South, Range 6 West. The proposed site not having the minimum lot size and parking space requirements, Section 901 of the Zoning Ordinance applies. This requires a variance, after notice and a public hearing. Such a variance was neither requested nor granted.
“The proposal of the applicant to operate as a unit a comprehensive residential housing development consisting of two widely separated housing projects in two separate residential districts, and to provide laundry, administrative, nursery, and maintenance services in two accessory buildings located in one of the two projects, is a violation of Section 540 of the Zoning Ordinance. This proposal is at variance with the purpose and intent of the zoning ordinance, and required a hearing before the Planning Commission, and the Board of Zoning Adjustment and Appeals, and required the approval of the ' City Council before the permit could be issued.
“We further concur with the findings of the Board of Zoning Adjustment and
*440 Appeals that the proposed Pine Street Housing development is not in harmony with the character of the neighborhood in which it is proposed to be located, and that its location on Pine Street would be detrimental to the life, health and safety of the residents of the Lake Avenue area, and of the citizens of the City of Pascagoula. The single family dwelling units in this neighborhood have á density of approximately three to the acre. The proposed Pine Street housing development would have imposed an acreage density of sixteen family dwelling units to the acre. The survey and plot plans show that this irregular tract fronts only on Pine Street. Eighteen foot private alleys provide the only means of ingress and egress on Pine Street. Pine Street is a narrow secondary street. The traffic congestion at the entrance and exit of the proposed project would cause serious hazards. The location is not suitable for the proposed apartment complex.
“We concur with the recommendations of the City Planning Commission that if the Pine Street housing development were to be approved that Pine Street should be widened by the City, and that an additional eight inch water main should be constructed to serve the entire area, since water pressure to this area is admittedly marginal. Funds for these purposes have not been included in the budget of the City and funds are not available for these purposes. Whether such city funds should be made available for these purposes is a matter to be determined in its discretion by the City Council. The City Council does not propose to authorize or to make such expenditures.
“Accordingly, Building Permit No. 5326 issued by the Building Official is revoked. The Brazil Street housing development having been reviewed by the City Planning Commission and by the Board of Zoning Adjustment and Appeals in connection with its review of the Pine Street housing development, this Order shall not be construed to affect the validity of Permit No. 5325 issued by the Building Official. The Building Official .shall estimate the construction cost of the Brazil Street housing development, and shall refund to the applicants any excess paid by it in connection with the issuance of that permit.”
The appellants appealed to the circuit court, which affirmed the order of the City Council revoking Building Permit 5326.
The appellants assign as error:
1.
The City’s action in suspending and revoking Building Permit Number 5326 on the ground that it was not validly issued was unreasonable, arbitrary, discriminatory, an abuse of City’s discretion and in excess of city powers.
2.
After the Appellants changed their position following issuance of the Building Permit, the City was estopped from revoking it.
3.
The City erred in the procedure it followed in suspending the Building Permit, referring its validity to the Zoning Board, and then revoking it.
4.
The City’s actions in revoking Building Permit Number 5326 deprive Appellants of their property without due process of law in violation of Sections 14 and 17, Article III, Constitution of the State of Mississippi.
At the threshold, we call to mind that the Mayor and City Council are the governing authority of the city of Pasca-goula. It was their responsibility to select *441 and employ the building inspector and official, W. J. Ditsworth, and it was the may or and city council who selected and appointed the City Planning Commission and the Board of Zoning Adjustment and Appeals. The mayor and city council constitute the executive, legislative, and judicial branches of the city government, all rolled up into one. Theirs is the final authority. The city attorney is their legal adviser, and the City Planning Commission and Board of Zoning Adjustment and Appeals their advisers as to planning and zoning; but the final decision is up to the City Council. City of Hattiesburg v. L. &. A. Contracting Co., 248 Miss. 346, 159 So.2d 74 (1963).
Several sections of Pascagoula’s zoning ordinance are applicable to this case and outline the procedure to be followed. Section 1103 provides in part:
“Appeals to the Board [of Zoning Adjustment and Appeals] may be taken by any person aggrieved or by any officer, department, board, commission, or bureau of the City of Pascagoula, affected by any decision of the Building Official. Such appeals shall be taken not more than sixty (60) days from the date of the decision of the Building Official by filing a notice of appeal with the Building Official.”
Even the amended Petition of the homeowners was filed within the 60-day period allowed for appeal.
Section 901 provides in part:
“Yard and other space requirements for the district in which the lot is located must be met, unless a variance is granted in accordance with the provisions of Article XI, Section 1105.3. The provisions of this section shall be subject to variance only after public hearing by the Pascagoula Planning Commission and approved by the Mayor and Board of Councilmen.”
Section 904, styled Group development residence proj ects, provides:
“In case of group development residence projects of two (2) or more buildings to be constructed on a plot of ground having an area of not less then two (2) acres, not subdivided into the customary street and lots, or where (the existing or contemplated street and lot layout make it impracticable to apply the requirements of this ordinance to the individual building units in such group development residence projects, the application of the terms of this ordinance may be varied by the Mayor and Board of Councilmen after a review by the Board of Adjustment and Appeals and the Planning Commission in a manner that will be in harmony with the character of the neighborhood, and will insure substantially the same character of occupancy and intensity of land use no higher and a standard of open space no lower than that permitted by this ordinance in the district in which the proposed project is to be located.”
The appellants did not seek a variance under Sections 901 and 904. They, of course, could claim that they were misled by the assurances of the building official, the city manager and the chairman of the City Planning Commission that they were meeting all the requirements of the building and zoning ordinances. This might excuse their omission, but it would not do away with the requirements and it would not validate a building permit issued in violation of the specific requirements of the zoning ordinance.
In City of Jackson v. Ridgway, 258 So. 2d 439 (Miss.1972), we discussed and answered some of the same questions posed here. Ridgway, a land developer, attempted to subdivide a tract of land into lots meeting the frontage and square foot requirements for a Class “B” subdivision. The area surrounding this undeveloped tract had already been subdivided and developed as a Class “A” subdivision and many attractive and expensive homes had been built on these lots. Even though lots meeting Class “B” subdivision specifica *442 tions met all the requirements for a district zoned A-l residential, we ruled that the City’s refusal to issue a building permit was not unreasonable or arbitrary under the circumstances. We said:
“Here, the question is not as to the type or character of the structures proposed. The case involves a review of the determination by the municipal authority that the crowding of 20 families in 10 two-family duplexes, to be constructed on a piece of land 150 feet by 600 feet, in the midst of an already highly developed residential area, should not be permitted. We think the statutes enacted by the legislature in this regard, as implemented by the ordinances of the City of Jackson, make it sufficiently clear that the governing authority of the municipality had the power to decline the request of the appellees provided that such action was not unreasonable, arbitrary, capricious, nor abusive of discretion. In the very nature of things, purchasers of unsubdivided land located in the midst of an already highly developed residential area, should not be permitted, at their unrestricted discretion and election, to frustrate the fundamental purposes of the statutes relating to orderly city planning and in addition to affect adversely values of existing homes.
“The action of the City of Jackson in declining to approve the proposed subdivision as well as in refusing to issue a permit to build two-family dwellings on 60 foot lots was not unreasonable, arbitrary, capricious, abusive of discretion nor unlawful under the circumstances appearing in the record. The decision of the trial court will be reversed and the orders of the City Council reinstated.” 258 So.2d at 443.
We were referring in City of Jackson v. Ridgway to Section 3592, Mississippi Code 1942 Annotated (1956), styled “Purposes in view,” which Section provides:
“Such regulations shall be made in accordance with a comprehensive plan, and designed to lessen congestion in the streets; to secure safety from fire, panic and other dangers; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population; to facilitate the adequate provision of transportation, water, sewerage, schools, parks and other public requirements. Such regulations shall be made with reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular uses, and with a view to conserving the value of buildings, and encouraging the most appropriate use of land throughout such municipality.”
In City of Jackson v. Bennie H. Kirkland, 276 So.2d 654 (decided April 16, 1973), we reversed the circuit court and reinstated an order of the city council making permanent a temporary stop order and cancelling a building permit which authorized Kirkland to move a dwelling house to a corner lot fronting on two streets, but on which there was already one dwelling. Kirkland had already moved the house and at considerable expense had permanently located it on the lot. We said in City of Jackson v. Kirkland:
“We are of the opinion and so hold that the person issuing the building permit in question to Kirkland was without authority to issue same as it was in violation of the ordinances of the City of Jackson and that Kirkland acquired no vested rights in the permit which would warrant invoking the aid of the doctrine of estoppel against the City of Jackson to prohibit it from making the temporary stop order final and revoking the permit. It is unfortunate that Kirkland has gone to the trouble and expense of moving the house in reliance on the invalid permit, however when this is weighed against the rights of the protestors living in the neighborhood, it becomes inconsequential. Further, the City of Jackson in its order has indicated that it is willing to reimburse Kirkland for any actual expenses that he has incurred.”
*443 In the instant case the appellants had just begun to clear the Pine Street site when the stop order was issued. In the or- „ , L, , _. _ , der of the Pascagoula City Council the building official was instructed to refund all charges made for Building Permit 5326.
We are of the opinion that the action of the Pascagoula City Council in suspending and revoking building permit 5326 was not unreasonable, arbitrary, discriminatory, an abuse of its discretion, nor in excess of its powers. The city was not estopped from revoking the permit erroneously issued in violation of the specific requirements of the zoning ordinance.
The judgment of the circuit court affirming the order of the Pascagoula City Council is, therefore, affirmed.
Affirmed.
GILLESPIE, C. J., and PATTERSON, INZER and WALKER, JJ., concur.