**DELTA CONSTRUCTION COMPANY OF JACKSON et al., Plaintiffs**

v.

**CITY OF PASCAGOULA et al., Defendants**

**Civ. A. No. 4211.**

United States District Court,
S. D. Mississippi, S. D.

Nov. 25, 1974.

Thomas G. Lilly, Vardaman S. Dunn, Jackson, Miss., for plaintiffs.

Karl Wiesenburg, Pascagoula, Miss., for City and individual defendants.

Robert E. Hauberg, U. S. Atty., Jackson, Miss., for defendant and cross-complainant.

## OPINION OF THE COURT

DAN M. RUSSELL, Jr., Chief Judge.

Plaintiffs, three Mississippi corporations, filed this action against the City of Pascagoula, Mississippi, its Mayor and five city councilmen, Phillip R. Kelley, the city manager, and W. J. Ditsworth, the city's building inspector, seeking a permanent injunction to enjoin the defendants from revoking a building permit issued to plaintiffs, and damages, including attorney fees and costs, resulting from the revocation of said permit. All of the above defendants are residents of Pascagoula. Plaintiffs joined the Secretary of Housing and Urban Development as a party defendant on the grounds that he declined to join plaintiffs as a co-plaintiff. Jurisdiction is invoked under 28 U.S.C. § 1331 and 42 U.S.C. § 1983, plaintiffs claiming that their cause of action arises by virtue of Article I, Section 10 and the 14th Amendment to the Constitution, and under the National Housing Act, 12 U.S.C. § 1701 et seq.

Plaintiff, Mississippi Industrial and Special Service, Inc. (MISS), a nonprofit corporation is engaged in sponsoring and constructing residential housing under various programs of the Federal Housing Administration (FHA) and the Development of Housing and Urban Development (HUD). MISS became the sponsor of a 144-unit low-rise apartment project in Pascagoula to be located on two separate sites, about two miles apart, and to be financed under Section 236 of the National Housing Act as amended. Plaintiff, Wildwood Village Apartments, Inc. (Wildwood), a nonprofit corporation, purchased the two sites, one on Pine Street, consisting of a 4 acre tract, and the other on Brazil Street, a 5½ acre tract, and was to erect and own the apartments. Plaintiff, Delta Construction Company of Jackson (Delta) was the general contractor engaged by Wildwood to construct 64 housing units at the Pine Street site, and 80 housing units at the Brazil Street site. Upon completion and occupancy MISS was to manage the apartments. The deal was packaged by Mrs. Bobbie Toups of Housing Consultants, Inc., engaged in developing real estate projects, particularly those which are federally financed, including three in Pascagoula, prior to the Wildwood project.

## FACTUAL BACKGROUND

The pertinent facts leading up to the trial of the case follow.

In late November 1970, Mrs. Toups met with defendant, Phillip Kelley, newly appointed city manager of Pascagoula, and with the city engineer to discuss the proposed project, presenting at that time a utility layout. On December 16, 1970, Kelley, by letter, advised the district director of FHA and HUD in Jackson, Mississippi, that the proposed plan met the City's codes and was acceptable. On March 30, 1971, the Federal Housing Commission, on behalf of the Secretary of HUD, issued a commitment for insurance of advances for the project including his endorsement for insurance on a note in the sum of $2,005,000.00, the note to be secured by a mortgage on the property. On April 1, 1971, Jon H. Bennett, chairman of the Pascagoula Planning Commission, advised Wildwood by letter that the property was zoned Residential (R–2), that it could be used for multiple family apartment usage, and that construction according to the plans and specifications would meet all zoning requirements of the city. On April 13, 1971, defendant, W. J. Ditsworth, building inspector, notified the FHA Director in Jackson that, upon the issuance of a check for $904.25 and upon further addenda to the plans and specifications providing fire walls in the attics and raising the level of upstairs bedroom windows, a building permit would be issued. On April 15, 1971, Kelley informed the Director of FHA that Ditsworth was authorized to issue building permits and that he would do so upon receipt of the permit fee and the required addenda to the plans and specifications. On April 22, 1971, Ditsworth advised Delta that the addenda were acceptable and upon receipt of the aforesaid $904.25 he would issue the permit. On April 26, 1971, Mrs. Toups filed an application on behalf of the owner, Wildwood, and the contractor, Delta, and on the same date, Ditsworth issued Building Permit No. 5325 for the Brazil Street project and Building Permit No. 5326 for the Pine Street project, both permits describing the projects as "New Apartments 144 Units, 18 Buildings."

Printed on the face of the application is language whereby the applicant acknowledges the validity of the zoning, fire prevention, building, plumbing, electrical, and other applicable ordinances and Codes of the City of Pascagoula and agrees that the provisions thereof shall be binding on the applicant as a condition precedent to the issue of a permit. It is undisputed that Mrs. Toups contacted the city officials, Bennett, Ditsworth and Kelley, and dictated their letters of assurance that the project plans met all zoning and building codes of the City. On April 26, 1971, two days after the issuance of the permits, the initial closing of the FHA insured loan to Wildwood was effectuated with Wildwood executing a note in the sum of $2,005,000.00 in favor of Deposit Guaranty Bank of Jackson and a deed of trust on the property. In the initial closing, Wildwood disbursed approximately $285,000.00 for initial expenses and entered into a contract with Delta to construct the apartments. On or about May 20, 1971, plaintiff Delta commenced clearing the Pine Street project. On or about May 25, 1971, a number of residents in the Pine Street area, including all the landowners adjoining the Pine Street site, filed petitions with the City Council objecting to the proposed construction until the validity of the building permit could be determined. By order dated June 1, 1971, the City Council directed the building inspector to stop the work and referred the question of the legality of the permit to the city attorney. By letter of June 3, 1971, the city attorney advised the City Council that the building inspector had erred in treating the construction at two sites as one project and in his computation of the fee based on 144 dwelling units, but recommended that the City Council reinstate the permit inasmuch as the fault was that of city officials. On June 8, 1971, plaintiffs' attorneys, in a letter to the City Council, protested the issuance of the stop work order, asked for reinstatement of the building permit and threatened action to protect their consti-

tutional rights. On June 15, 1971, a meeting was held in the office of the city attorney at which members of the City Council, and attorneys for plaintiffs and the objecting residents were present. It was agreed to refer the matter to the city Planning Commission for review. On June 16, 1971, the resident objectors filed an amended petition requesting a hearing before the City Board of Zoning Adjustment and Appeals protesting the issuance of the permit. On the same day the Planning Commission heard the attorneys for both plaintiffs and objectors and reviewed the plans and specifications. On June 17, 1971, the Planning Commission, by a divided vote, recommended to the City Council that the Council approve the permit issued by the building inspector and recommended further that (1) the City provide an 8″ water line to the area including the Pine Street site, (2) that Pine Street be widened to the minimum width required for public streets in the City, and (3) that the builders of the proposed apartment complex provide suitable recreational equipment at the site. On June 22, 1971, the City Council met in recessed session to consider the recommendation of the Commission and the amended petition of the protesting residents requesting a hearing before the Board of Zoning Adjustment and Appeals. The City Council directed that the Board hold a public hearing on the petition as required by city ordinance, and make its recommendations to the Council. Plaintiffs' attorneys were present at the Council meeting. The Board of Zoning Adjustment and Appeals gave notice of a public hearing on the question of the validity of the permit as provided by city ordinance, the hearing to be held on July 12, 1971.

On July 9, 1971, the plaintiff corporations filed this suit, their claims being elaborated upon hereinafter under "Pleadings".

On July 12, 1971, the Board of Zoning Adjustment and Appeals met and unanimously recommended the revocation of the building permit for the Pine Street project. The City Council met on July 20, 1971, to consider the recommendations of both the Planning Commission and the Board of Zoning Adjustment and Appeals. The Council, through an order on its minutes, revoked the permit, finding that the proposed construction required variances from provisions of the city's zoning ordinance and that the building inspector had no authority to issue the permit without such variances having been granted after a hearing before the proper administrative agencies and the approval of the City Council. The Council concurred in the findings of the Board of Zoning Adjustment and Appeals that the Pine Street project would be detrimental to the life, health and safety of the residents of that area in that the project would impose an acreage density of 16 family dwelling units to the acre, whereas the single family dwelling units in this neighborhood have a density of three to the acre, and further that the project would front on Pine Street, a secondary road, with egress and ingress by way of 18 foot private alleys, this causing serious congestion and hazard. The Council also concurred in the recommendations of the Planning Council that, if the construction of the development were approved, the City should widen Pine Street and construct an additional 8″ water main to serve the area, water pressure being marginal. However, the City Council found that funds for these purposes were not included in the City budget and were not available. Plaintiffs did not attend either the hearing before the Board of Zoning Adjustment and Appeals or the July 20, 1971 meeting of the City Council.[1]

By a bill of exceptions, plaintiffs appealed the decision of the City Council

---

1. Plaintiffs' explanation of non-attendance at these two meetings was that, having filed suit in the federal district court, they did not wish to give the appearance of having waived their federal claims.

to the Circuit Court of Jackson County which affirmed the action of the City Council, holding such action to be neither arbitrary, unreasonable, discriminatory, nor in violation of law. On May 14, 1973, the Supreme Court of the State of Mississippi affirmed the circuit court decision in Delta Construction Company of Jackson et al. v. City of Pascagoula, 278 So.2d 436. In its decision the Supreme Court detailed the facts set forth above, and after reciting verbatim the minutes of the City Council's meeting of July 20, 1971, containing its findings relative to the permit and its order revoking same, found that, under the city's zoning ordinance, appellants, plaintiffs here, did not seek a variance under applicable sections of the zoning ordinance; that although they claimed they were misled by the assurances of the building inspector, the city manager, and the chairman of the City Planning Commission, such assurances would not do away with the ordinance requirements and would not validate a building permit issued in violation of the ordinance specifically citing Sections 901, 904 and 1103. Section 901 provides that yard and space requirements for the (zoning) district in which the lot is located must be met in accordance with the provisions of Article XI, Section 1105.3, unless a variance is granted and further that the provisions of this section shall be subject to variance only after a public hearing by the Planning Commission and City Council. Section 904 provides in case of group development residence projects of two or more buildings to be constructed on a plot of ground having an area of not less than two acres, not subdivided into the customary street and lots, the application of the terms of this ordinance may be varied by the City Council after a review by the Board of Adjustment and Appeals and the Planning Commission in a manner that will be in harmony with the character of the neighborhood and will insure substantially the same character of occupancy and intensity of land use no higher and a standard of space no lower than that permitted by this ordinance. Section 1103 provides that appeals may be taken by any person aggrieved or by any board or commission of the City affected by any decision of the building official within 60 days by filing a notice of appeal with the building official. Finally, the court said that it was of the opinion that the action of the Pascagoula City Council in suspending and revoking the permit was not unreasonable, arbitrary, discriminatory, an abuse of its discretion, nor in excess of its powers.

On September 6, 1973, construction on the Pine Street project having been halted, Wildwood's note and deed of trust in favor of Deposit Guaranty Bank were amended to reduce the amount of the note to the sum of $1,350,700.00. The Brazil Street project was not involved in a protest and continued to completion.

### THE PLEADINGS

Plaintiffs on the basis of the facts set out above occurring up to the time of the filing of their complaint on July 9, 1971, charged that the defendants have denied to plaintiffs equal protection and due process under the 14th Amendment, their actions being arbitrary and capricious, have denied plaintiffs equal privileges under 42 U.S.C. § 1983 while acting under color of law, and that defendants' acts are in violation of the National Housing Act and in conflict with federal supremacy. For relief plaintiffs requested a permanent injunction restraining defendants from revoking the building permit for the Pine Street project, and, as damages, the sum of $285,766.25 expended on initial costs prior to the revocation of the permit, attorney fees, and other damages not then ascertainable. The plaintiffs sought no temporary restraining order or a preliminary injunction. The defendants, City of Pascagoula and its named officials offered seventeen defenses, which the Court will not now enumerate in view of the positions of the parties at the time of the trial. The defendant, Secretary of HUD, in his answer, charged that the

Court lacked jurisdiction of the subject matter, that the complaint failed to state a claim upon which relief could be granted, and at the same time filed a cross-claim against the City of Pascagoula only, charging that the Secretary relied to his detriment on the assurances of city officials that the project complied with all zoning and building codes; that the city, in revoking the permit has frustrated the purpose for which federal funds have been appropriated, has created the likelihood of default on the part of the mortgagor exposing the Secretary to financial loss, and that the actions of the city are void under the Supremacy Clause of the Constitution because they conflict with federal regulations. The Secretary sought permanent injunctive relief only, namely to restrain the revocation of the permit. The City, in its answer, again set up numerous defenses, detailing the ways in which the proposed project failed to comply with zoning requirements, averring that the permit did not have approval of the City Council in the manner prescribed in the ordinances, and that the Secretary was in violation of his own regulations requiring that the project comply with applicable zoning ordinances, averring that he and the plaintiffs are charged with knowledge of the City's zoning ordinances and building codes. The City also filed a counter-claim against the Secretary to restrain him from carrying out or implementing any federal commitments to the Pine Street project without first complying with the requirements of the National Environmental Policy Act, HUD regulations, and the city ordinances.

All parties engaged in extensive discovery and following the decision of the Mississippi Supreme Court in Delta Construction Company of Jackson v. City of Pascagoula, noted above, the city moved to dismiss the cross-claim of the Secretary, moved for a judgment on the pleadings or, in the alternative, for a summary judgment, and, as a second alternative, moved for a preliminary injunction on the City's counter-claim

against the Secretary, claiming that the state court suit rendered moot all issues sought to be litigated by the government.

Plaintiffs countered with a motion for summary judgment claiming that the defendants denied plaintiffs equal protection of laws under the 14th Amendment in that the undisputed facts show the Pine Street project was discriminated against, it being the first and only housing project for which approval by the Planning Commission, Board of Zoning Adjustment and Appeals, and the City Council was required, whereas other similar projects were approved on the issuance of a building permit only.

The government, on behalf of the Secretary, also filed a motion for summary judgment on its cross-claim against the City, supported by the affidavit of the Director of the Jackson Area Office of HUD who said that the closing attorneys do not make independent examination of zoning laws, but rely on the representations of compliance made by city officials.

The Court overruled all the motions and the case went to trial.

Before the production of evidence began, the parties announced in open court that plaintiff, Wildwood, had defaulted on its indebtedness, evidenced by the note and deed of trust in favor of Deposit Guaranty; that Deposit Guaranty had foreclosed on the Wildwood project, including both sites, had bought in at the foreclosure sale, and, upon having its indebtedness paid off by FHA, had conveyed the property to HUD. Plaintiffs conceded that they had effectively been ousted by the occurrence of these events and that their requested injunctive relief had been made moot. However, on defendants' renewed motion to dismiss on the grounds that the City and its officials are immune from damages, plaintiffs insisted that they are due damages for the arbitrary and wilful actions of the city defendants by virtue of 42 U.S.C. § 1983. Specifically Delta claims that portion of its overhead

expenses and attorney fees not heretofore paid; Wildwood claims attorney fees since February 2, 1973 which have not been paid; and MISS claims the fee it would have been entitled to receive from the Brazil Street apartments which were foreclosed on in the approximate sum of $195,000.00 and attorney fees in the sum of $17,560.00. The government announced it no longer sought injunctive relief on its cross-complaint against the City but seeks damages. These damages are two-fold: the sum of $184,467.00 attributable to the failure of the City to reinstate the building permit for the Pine Street project, and the difference between what the Secretary has paid out and what it will get from a sale of the properties, estimated to be a net loss of $778,615.34.

■ Although this is not a diversity case, the Court is bound by the decision of the Mississippi Supreme Court upholding the revocation of the Pine Street building permit insofar as state law is applicable, noting that the state court found that the action of the City Council in suspending and revoking the Pine Street site building permit was not unreasonable, arbitrary, discriminatory, an abuse of its discretion, nor in excess of its powers. The Court, however, is aware that plaintiffs in the state court suit, who are plaintiffs here, specifically reserved from that suit constitutional issues raised here, citing England v. Louisiana Medical Examiners, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 as their authority. As the Court sees it, plaintiffs in their federal claims are asserting that defendants denied them equal treatment and due process of law, and in so doing, their actions were arbitrary and capricious. They also claim that defendants' actions are in violation of the National Housing Act and are in conflict with federal supremacy. In the latter, the Secretary joins, simply saying that at the time of the initial loan closing he was entitled to rely on the assurances of the city officials, Bennett, Kelley and Ditsworth, that the project site met with local zoning ordinances and building codes, and that he does not have to comply with local zoning ordinance procedures, particularly where they may be in conflict with his own regulations.

■ The Court has examined in detail the pleadings, the affidavits and exhibits in support of and against the various motions, the voluminous documentary evidence offered as exhibits in the trial and the testimony of witnesses and deals with only that part of all the evidence pertaining to the federal issues raised by the corporate plaintiffs and the Secretary. At the outset the Court has considered the zoning ordinances as they existed at the time the building permits were issued, April 26, 1971, and not the amendments thereafter enacted. It is obvious that the corporate plaintiffs, Mrs. Toups on their behalf and the city officials, Kelley, Bennett and Ditsworth, considered the proposed construction as a low-rise, apartment house project, even though eight separate buildings were intended for the Pine Street site, two of which would contain eight three-bedroom units each, four buildings would contain eight two-bedroom units each, and two buildings would contain eight one-bedroom units each, for a total of 64 units in eight separate buildings, with an accessory administration building to house a reception room, an office, a meeting room, work area, storeroom and laundry for use of the tenants of both sites, and even though the Brazil Street site called for a total of 10 separate buildings, similar in design to those of the Pine Street site, containing 80 dwelling units. On the other hand the City Council has consistently taken the position that the two sites composed a group development housing project, subjecting it to certain sections of the zoning ordinance requiring a variance, particularly Section 904 requiring a variance to be approved by the Board of Adjustment and Appeals, the Planning Commission and the City Council. The state supreme court upheld the City's position and this Court concurs. This finding removes in great part plaintiffs'

contention that the Pine Street project was discriminated against. Plaintiffs undertook to show that similar projects in R–2 zoning districts had received the approval of the building inspector only. The City's response to this through the testimony of Ditsworth himself, other witnesses, affidavits and minutes of the Council is that the City has never discriminated against housing or apartment projects, whether federally or privately financed, and for such of those projects that would fall within Section 904, if objections had been made, no appeals followed. The City's position is further strengthened by its argument that to deny any person, including city officials, who are aggrieved by a decision of the building official, the right to appeal within 60 days, is in itself a denial of due process and equal treatment. To hold otherwise would equate with the proposition that individual administrative officials, such as a building inspector, a city manager, or a chairman of a planning commission, may make final decisions which statutorily are reserved to the City Council.

 As to the corporate plaintiffs' claim against the City for damages founded on 42 U.S.C. § 1983, Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L. Ed.2d 492, Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288, and City of Kenosha v. Bruno, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109, make it clear that the City is not a "person" where equitable relief is sought, and is immune from damages, as well as are the City officials who act in good faith. In considering the actions of defendant Kelley, the city manager, he had no administrative relation to the enforcement of zoning ordinances, nor is his title anywhere mentioned in the zoning ordinances as a city official with any official connection or authority. It may be assumed that Bennett, as chairman of the Planning Commission, who is not a named defendant, was knowledgeable of the ordinances, but even as chairman, he had no authority in the ordinance itself to bind the Commission, much less the City Council. Ditsworth, in his affidavits and throughout his testimony, clung to his belief that he had made the proper calculations with regard to area and parking space requirements, and that he had validly issued the permit. Although the Council and the state supreme court found him in error in his assurances that the Pine Street project met zoning and other codal requirements and in his issuance of the permit, there is no evidence that he acted other than in good faith. The same is true of Kelley and Bennett. Although their actions were unauthorized, they acted in good faith. Which leaves for consideration the individual members of the City Council under the Section 1983 claim. Plaintiff has not charged them with wanton or wilful acts outside the scope of their delegated duties, but with arbitrariness in their official acts, evidenced by the order of the City Council dated July 21, 1971, as reflected by the minutes of this body, a copy being an exhibit herein. The Court has carefully reviewed the petition of some 256 citizens residing in the vicinity of the Pine Street project, the minutes of the Planning Commission recommending the re-issuance of a building permit conditioned on the City's furnishing an additional 8 inch water main and widening Pine Street, the only street on which the project fronted, the transcript of the public hearing before the Board of Adjustment and Appeals reflecting its recommendation for the continued revocation of the permit, and the order of the City Council in which it reviewed its consideration of the petition and the conflicting recommendations of the two inferior agencies, culminating in its findings and order revoking the permit, all of these documents being exhibits herein. The evidence before the Board of Adjustment and Appeals was overwhelming in supporting the conclusion of that board that the city manager, chairman of the Planning Commission and the building inspector had no authority to give assurances to plaintiffs and cross-defendant here that the Pine Street project met

the zoning ordinances and building codes of the City of Pascagoula and the conclusion that the building inspector was in error in granting a building permit for the Pine Street project in the absence of plaintiffs' failure to secure variances in the manner provided for in the zoning ordinance. The adoption of that board's recommendation by the City Council, following full notice to the parties and the public, was neither arbitrary nor capricious.

There remains the issue of the effect of the Supremacy Clause as pled by plaintiffs and cross-defendant, and the latter's theory that the City should be estopped from enforcing the revocation. The Secretary avers that FHA procedures require that the evidence of compliance with local ordinances shall be in the form of letters or certificates from local agencies or· officials charged with administration and enforcement of local ordinances indicating that, if constructed pursuant to plans and specifications, the proposed project will comply with such ordinances. A building permit is also required. By affidavit on file herein, James S. Roland, Director of the Jackson Area of HUD, stated that pursuant to requirements contained in HUD's firm commitment for insurance of advances, FHA Form 2432, the sponsor of a project to be insured and assisted under Section 236 of the National Housing Act, must obtain, by the time of initial closing of the contract for mortgage insurance, evidence in the form of a letter or certificate from the building department or other agency of the city that the building, if constructed according to plans and specifications, will comply with all local zoning and land use requirements, and that copies of building permits must be submitted prior to initial closing. The legal documents required before the initial closing are listed on FHA Form 3618. At the initial closing the HUD closing attorney inspects these documents, and as long as they appear to be properly issued on their faces, the closing attorney does not make an independent determination of

their accuracy, nor is he required to under HUD regulations and procedures. In his affidavit Roland further stated that after the closing attorney had reviewed the letter assurances of the city officials, in this case, Kelley, Bennett and Ditsworth, the closing attorney certified that these and all other legal requirements had been met and he recommended that the contracts for mortgage insurance be executed. Further, Roland stated that the Insuring Office Director, relying on these certifications, executed the documents incontestably binding the Secretary of HUD to insure and assist the Wildwood Village project. HUD's closing attorney also testified. He stated at the time of the trial that he had handled approximately 100 closings for HUD and was familiar with the Secretary's regulations. In relating to this case, he stated that the Secretary's regulations pertaining to property appear in CFR, Vol. 24, Section 221.545(c); that they require that an apartment project must comply with material zoning and deed restrictions, but that the regulations do not spell out with any detail how this requirement is to be evidenced. HUD has implemented this requirement with its own Form No. 3618, "FHA Legal Requirements for Closing", which is a check list of requirements, Item 9 being designated "Evidence for Zoning Compliance." He also identified FHA Form No. 7, titled "207 Closing Procedures", applicable to multiple dwelling loans under Section 236 of the National Housing Act, which under Paragraph "Title Evidence", 5(b) provides as follows:

"(b) The evidence of zoning compliance will vary depending on circumstances. It should establish that the building if constructed according to plans and specifications will comply with all zoning requirements. This evidence may be in the form of a letter or certificate from the building department or other agency of the city or county."

The witness stated that his common practice was to secure a letter from a

planning commission and a copy of the building permit. Again relating to this case, he stated that he relied on the letter dated April 1, 1971, from Bennett,[2] chairman of the Pascagoula Planning Commission. Bennett testified as a witness for the government. Under voir dire by the city attorney, Bennett admitted that the authority of the Planning Commission is derived through the recorded actions of the City Council and that, he, individually as chairman, had no authority to write letters of assurance such as his letter of April 1, 1971, but that he had done so at the request of Mrs. Toups, for her convenience, as well as for others requesting such a letter. His policy was to first confer with the city manager and building inspector. He conceded that neither the Mayor nor the other members of the City Council, nor other members of the Planning Commission were aware of such action on his part. He too considered the application for the building permit as one for an apartment project and thought of it as no different than those for other apartment complexes whose applications were not required to be reviewed by the Planning Commission. At the same time he conceded that he was not aware of any other application similar to this one where a single project included two widely separated building sites, only one of which would have a non-dwelling building on it for the use of tenants from both sites, and he further conceded that the issuance of the building permit for the Pine Street site was the first time there had been an appeal relating to a multiple dwelling project.

By way of argument, the government on behalf of the Secretary contends that defendants' reliance on Davis v. Romney, 3 Cir., 490 F.2d 1360 is misplaced in that the Congressional instructions concerning the applicability of local codes to projects assisted pursuant to the Section 236 program, multi-family dwellings, are much less stringent than the requirements pertaining to the Section 235 program for single family dwellings which were treated in Davis v. Romney. The government contends that federal policies relating to protecting the Treasury, eliminating uncertainty from the administration of HUD's insurance programs, and facilitating production of more and better housing require the application of the doctrine of estoppel. The government concedes that HUD regulations, 24 CFR 221.545(c) require that in order to be insured under § 221(d)(3) or § 236 of the National Housing Act, an apartment project must comply with material zoning and deed restrictions, but says that HUD has limited that evidence to the form of unconditional letters from local zoning or building agencies, to be submitted prior to initial closing, stating that, if constructed pursuant to plans and specifications, the project complies with all local ordinances. Further, that until HUD goes to initial closing, the local community is free to withdraw or modify assurances made to HUD; that, under any circumstances, HUD should not be put to the administrative burden of interpreting local ordinances as they vary from state to state; and that under such circumstances the protection of the Treasury and the promotion of the security of federal investment are policies which should supersede contravening local policies and rules, citing United States v. Stadium Apartments, Inc., 425 F.2d 358, cert. denied, 400 U.S. 926, 91 S.Ct. 187, 27 L.Ed.2d 185; United States v. Sylacauga Properties, Inc., 5 Cir., 323 F.2d 487; and United States v. View Crest Garden Apts., 9 Cir., 268 F.2d 380. Finally, the government says that the Secretary, having relied on the unconditional assurances of city officials, to his detriment, is entitled to recover his losses from the City, and that the City should be estopped from claiming otherwise. The doctrine of estoppel should not be lightly invoked. 28 Am. Jur.2d, "Estoppel and Waiver," Section 123, p. 783.

As Justice Fortas noted in United States v. Yazell, 382 U.S. 341, 86 S.Ct.

---

2. Again the Court notes that Bennett is not a named defendant.

500, 15 L.Ed.2d 404, there is a continuing problem of the interaction of federal and state laws in our complex federal system. As this is not a diversity case, the issue is simply whether or not the interest of the federal government in promoting housing under the National Housing Act is paramount to the right of the City of Pascagoula to enforce its zoning laws. Should the Court agree that the Secretary has the right, after due consideration to the feasibility of the project herein contemplated, to proceed with construction whether in compliance with local zoning laws or not, as the government contends, the solution here is not easy. In United States v. Hext, 444 F.2d 804, the Fifth Circuit Court of Appeals addressed itself to the issue of whether federal or state law controls in suits brought by the United States to enforce its rights under FHA farm mortgages. That Court aligned itself with the Third, Sixth, Ninth, and Tenth Circuits, see Stadium Apartments, Inc., Sylacauga Properties, Inc., and View Crest Garden Apts., supra, in holding that federal law applies. This Court is bound by these rulings unless the facts and circumstances here dictate a different conclusion. The Court finds that they do.

The Secretary, by reason of his self-imposed regulation requiring compliance with material zoning laws, recognized the necessity of such compliance in other documents relating to this project, all on FHA forms. FHA Form No. 2432 "Commitment For Insurance for Advances", under paragraph 3(g) provides: "Evidence will be required to show that the premises are not zoned or restricted so as to prevent the construction of the improvements, and that building and other permits have been issued by legally constituted authorities having jurisdiction." In the "Deed of Trust", FHA Form No. 4135b, paragraph 14 provides, in part: "That the improvements about to be made upon the premises above described and all plans and specifications comply with all municipal ordinances and regulations made or promulgated by *lawful authority,* . . .". In the Building Loan Agreement", FHA Form No. 2441, paragraph (8) provides: "The Borrower agrees that said project shall be constructed strictly in accordance with all applicable ordinances and statutes . . . and will not violate applicable use or other restrictions contained in prior conveyances, zoning ordinances or regulations."

The Court finds the Secretary inconsistent in his contention that he is not bound by local ordinances when the multitude of FHA forms, presumably drawn in compliance with his regulations, insist upon such compliances. If the degree of evidence to show compliance is the underlying issue in this case, then the Secretary has not complied, with his own requirements that the assurances of compliance be made by "legally constituted authorities." Although the Secretary relied on the statements of city officials with apparent authority, surely the Secretary, plaintiffs and every one else are charged with knowledge that the issuance of a building permit is subject to appeal. In view of the kind of evidence relied on, the proposed project of multiple dwelling units on two widely separated sites, the amount involved being over $2,000,000.00, and the rush to initial closing within two days of the issuance of the permit, all express a careless regard of the acknowledged right of the city to expect compliance with its zoning laws. This Court does not hesitate to say that, upon the revocation of the permit, had either the plaintiffs or the Secretary applied to this Court for a stay, a resolution of the problem could possibly have been worked out, without the resulting damages now claimed. At least the plaintiffs and the Secretary could have been saved a major portion of their losses occasioned by the foreclosure. Although the Secretary attributes his loss to the City's refusal to revoke the suspension of the permit for the Pine Street project, there is evidence before the Court that the Brazil Street project failed for lack of sufficient ten-

ant occupancy due in part to faulty construction and an over abundance of multiple dwelling units in the City. Under these circumstances the Court finds that the plaintiffs and cross-defendant were derelict in not securing reliable evidence of compliance from legally constituted authorities, and where equity might have invoked an estoppel against the City before significant monetary losses occurred, the Court declines to find that the City should now respond in damages claimed by plaintiffs and cross-defendant.

An order dismissing the suit with prejudice and with taxable costs assessed to plaintiffs may be submitted within the time provided for by the local rule of this Court.